IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) | CIV. NO. 10-00629 JMS-BMK CIV. NO. 11-00174 JMS-BMK |
| Plaintiff, | ) ) | [CONSOLIDATED CASES] |
| vs. | ) ) | ORDER (1) DENYING GARTH H. MASTERS AND KATHI L. MASTERS' |
| GARTH H. MASTERS and KATHI L. MASTERS, | ) ) ) | MOTION TO DISMISS SECOND AMENDED COMPLAINT, AND (2) DENYING GARTH H. MASTERS AND |
| Defendants. | ) ) | KATHI L. MASTERS' MOTION TO REMAND |
| _____ | ) | |
| GARTH H. MASTERS and KATHI L. MASTERS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER (1) DENYING GARTH H. MASTERS AND KATHI L. MASTERS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT, AND
(2) DENYING GARTH H. MASTERS AND KATHI L. MASTERS'
MOTION TO REMAND**

# I. **INTRODUCTION**

This insurance coverage and bad faith action consists of two recently consolidated cases. In Civ. No. 10-00629 JMS-BMK, Hartford Underwriters Insurance Company ("Hartford") as Plaintiff seeks a declaration under 28 U.S.C. § 2201 that it owes no duty to defend or indemnify its policyholders Garth H. Masters and Kathi L. Masters ("the Masters") against a suit pending against the Masters in state court ("the Underlying Action"). In Civ. No. 11-00174 JMS-BMK, the Masters as Plaintiffs seek damages for unfair and deceptive trade practices, negligence, and bad faith, as well as declaratory relief against Hartford as Defendant.

Two Motions are before the court. First, the Masters have filed a Motion to Dismiss Second Amended Complaint [ECF No. 23][1] ("Motion to Dismiss"), directed at Civ. No. 10-00629 JMS-BMK, contending that the court should decline to exercise jurisdiction under the doctrine set forth in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and its progeny. Second, the Masters have filed a "Motion to Remand Civil Action (CV 11-00174) Back to State Court" [ECF No. 27] ("Motion to Remand").

---

[1] Unless specified otherwise, the court's Electronic Case File ("ECF") document references are to the docket in Civ. No. 10-00629 JMS-BMK, which is the lead case. *See* ECF No. 25 (Order Consolidating Cases).

For the reasons set forth, both Motions are DENIED.

## II. BACKGROUND

A.    **Factual Background**

1.    *The Underlying Action*

The present consolidated action arises from a dispute as to the nature of the Underlying Action, *Bosshard et al. v. Masters et al.*, Civil No. 09-1-0052, which is pending in the Fifth Circuit Court for the State of Hawaii.  The plaintiffs in the Underlying Action are Kurt and Arlene Bosshard and the Kurt Bosshard Trust (collectively "the Bosshards"), who are the Masters' neighbors on the Island of Kauai.  Because insurance coverage generally depends upon the allegations of the Underlying Action, the court sets forth those details here, as alleged in the Bosshards' amended complaint of June 24, 2009.  *See* Second Am. Compl. Ex. 2, ECF No. 18-2 ("Underlying FAC").

The Bosshards allege, among other facts, that the Masters damaged their property in a variety of ways when the Masters were constructing their home or unit ("Unit B of the Kamalii Ikena [Condominium] Project") -- an 8,000 square foot residential building or complex -- next to the Bosshards' property.  *Id.* ¶¶ 43-47.  For example, during construction, the Masters built a retaining wall that required removing part of an existing boundary fence belonging to the Bosshards;

this boundary fence was damaged or not replaced by the Masters. *Id.* ¶¶ 50-52.

The Masters' swimming pool was designed such that water adversely affects the

Bosshards' property by allowing drainage through a retaining wall two feet from

the boundary line. *Id.* ¶¶ 53-56. During construction, "fugitive dust" migrated to

the Bosshards' property. *Id.* ¶ 63. A stream was diverted and mud and debris

flowed (and still flows) from the Masters' project to the Bosshards' property. *Id.*

¶ 65. Construction was allegedly done without proper permits, *id.* ¶¶ 66-73, and

debris was and is a "significant eyesore." *Id.* ¶ 74.

Besides construction issues, the Underlying FAC alleges that the

Masters' development invades the Bosshards' privacy and diminishes the fair

market value of their home. *Id.* ¶¶ 77-78. The Bosshards had previously spent

considerable time and effort landscaping their property to make it private,

"including the installation of plant buffers and a long fence along the

boundaries[.]" *Id.* ¶ 20. When the Bosshards moved into their home in 2003,

"none of the homes on the properties adjacent . . . had a significant view of the

Bosshard home, or significant portions of the swimming pool area, yard, or

pasture." *Id.* ¶ 22. The Bosshards claim that the Masters' "Unit B House" now

overlooks their property such that the Masters can see the Bosshards' home,

swimming pool, and yard. *Id.* ¶ 76. To protect their privacy, the Bosshards

planted a hedge of twenty two palm trees on the boundary line between the Bosshard and Masters properties.  *Id.* ¶¶ 79-87.

According to the Underlying FAC, Garth Masters confronted Kurt Bosshard on September 4, 2007, and demanded that he remove the hedge.  *Id.* ¶ 89. When Kurt Bosshard refused to do so, Garth Masters became upset and verbally challenged and threatened him, and later "repeatedly told several other persons at work on the Unit B Reconstruction Project in a loud voice that [Kurt Bosshard] was a 'pussy' and an 'asshole,' that no one likes [Kurt Bosshard], that [Kurt Bosshard] was 'born rich' and that [Kurt Bosshard] 'never worked a day in his life' and other derogatory statements."  *Id.* ¶¶ 90-92.

The day after the confrontation, Garth Masters "stood on the retaining wall . . . and stared at [Kurt Bosshard] in a menacing manner continuously for approximately thirty (30) minutes" and "stared at [Arlene Bosshard] through the windows of the Bosshard Home in a menacing manner continuously for approximately twenty (20) minutes while [she] was cooking dinner."  *Id.* ¶¶ 93-94. The Masters allegedly then conspired "to secretly and covertly retard and destroy the growth of the trees that comprise the [palm tree] Hedge."  *Id.* ¶ 95.

The Underlying FAC describes how the Masters allegedly trespassed onto the Bosshards' property, and cut leaves off of twenty of the palm trees.  *Id.*

¶¶ 96-97.  Later, after the Bosshards planted a second row of trees, the Masters allegedly again trespassed onto the Bosshards' property and "applied an herbicide or other toxic substance/agent or growth retardant" on the soil or directly on the trees.  *Id.* ¶¶ 99-100.  The trees have been damaged and the soil "has been contaminated and has been significantly rendered unfit to properly support the growth of healthy trees, plants, shrubs, or other vegetation."  *Id.* ¶ 102.  As a result of the Masters' "intentional actions, [the Bosshards] have been and continue to be deprived of the privacy that the . . . Hedge had already been affording them."  *Id.* ¶ 103.

Besides tree damage, the Underlying FAC alleges that the Masters installed "high powered Exterior Spot Lights" and "knowingly and intentionally directed and pointed the Exterior Spot Lights" at the Bosshards' home and property "in a regular and continuous manner during all hours of darkness."  *Id.* ¶ 107.  The Exterior Spot Lights were "of such an intensity" that they "directly interfered with the normal sleeping patterns and social and work activities" of the Bosshards and present "a clear and present danger to wildlife in the area, including but not limited to Native Hawaiian shearwater birds."  *Id.* ¶¶ 108-09.

The Underlying FAC asserts the following counts against the Masters ("individually and in [their capacities] as an owner in and officer and director of

the Association of Apartment Owners of Kamalii Ikena"): (1) civil conspiracy,

(2) trespass, (3) nuisance, (4) waste, (5) conversion, (6) encroachment, (7) invasion

of privacy, (8) slander of title, (9) tortious interference with prospective economic

advantage, (10) defamation, (11) intentional infliction of emotional distress,

(12) negligence, and (13) injunctive relief.

### 2. *Hartford Defends the Masters Under a Reservation of Rights*

The Bosshards filed the Underlying Action against the Masters on

February 24, 2009, and the Masters tendered the action's defense to Hartford based

upon two Hartford homeowners insurance policies under which the Masters are

named insureds. Second Am. Compl. ¶¶ 10, 20-24, ECF No. 18. On May 27,

2009, Hartford appointed counsel to defend the Masters, but issued a reservation of

rights letter. *Id.* ¶ 11. The letter told the Masters that there was no potential for

coverage for "bodily injury," that the policies contained an exclusion of coverage

arising from discharge of pollutants, and that punitive damages were not covered.

Defs.' Mot. to Dismiss (Civ. No. 10-00629) Ex. A, at 5, ECF No. 23-3. Hartford,

however, indicated that the Underlying Action included allegations of property

damage and defamation that could potentially be covered. *Id.* at 6. The letter

stated that "significant elements of this loss will not be covered" and that Hartford

"reserve[s] our right to all coverage defenses available under the policy, including

a denial of coverage" and that "Hartford will indemnify only the covered portions of this lawsuit." *Id.* at 6-7.

On June 24, 2009, the Bosshards amended their state court complaint against the Masters with the Underlying FAC. It is similar to the original February 24, 2009 complaint that had been tendered to Hartford, but it withdrew claims for negligent infliction of emotional distress and unfair and deceptive trade practices. Underlying FAC ¶ 12. On September 2, 2009, the state court dismissed counts eight (slander of title) and nine (tortious interference with prospective economic advantage) of the Underlying FAC. Accordingly, the remaining counts against the Masters in the Underlying Action are: (1) civil conspiracy, (2) trespass, (3) nuisance, (4) waste, (5) conversion, (6) encroachment, (7) invasion of privacy, (10) defamation, (11) intentional infliction of emotional distress, (12) negligence, and (13) injunctive relief. The Underlying Action remains pending in state court; Hartford is apparently still providing a defense for the Masters, and by this action seeks to end its representation.

On October 1, 2010, Hartford issued a supplemental reservation of rights letter to the Masters' counsel. Second Am. Compl. ¶ 19, ECF No. 18. Hartford "advised [the Masters] of additional insurance coverage issues which have come to light" and reiterated that the defense it was providing was "under a

8

full reservation of rights to all coverage defenses available."  Pl.'s Opp'n (Civ. No. 10-00629) Ex. 2, at 1, ECF No. 31-3.  Hartford's letter opined that (1) personal liability coverage under the policies is not applicable because there is no "bodily injury" or "property damage" caused by an "occurrence" in the Underlying Action within the meaning of Hartford's policies;[2] (2) personal liability coverage is excluded under an "expected or intended injury" exclusion;[3] (3) personal injury coverage is not applicable because there is no "personal injury" (libel or slander) as defined in Hartford's policies; (4) coverage is barred by an exclusion for injury caused by an insured with the knowledge that acts would inflict personal injury or -- as to oral or written publications -- with knowledge of their falsity;[4] (5) there is no coverage for acts of the Masters in their capacities as officers or directors of the

---

[2]  The Hartford policies provide "Personal Liability" coverage "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence[.]'"  Second Am. Compl. Ex. 4, at 29, ECF No. 18-4.  The policies define (1) an "occurrence" as "an accident, including continuous or repeated exposure to substantialy the same general harmful conditions," (2) "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results," and (3) "property damage" as "physical injury to, destruction of, or loss of use of tangible property."  *Id.* at 1, 3.

[3]  Under the Hartford policies, "Personal Liability" coverage does not apply to "'bodily injury' or 'property damage' which is expected or intended by an 'insured[.]'"  Second Am. Compl. Ex. 4, at 32, ECF No. 18-4.

[4]  The Hartford policies exclude coverage for "personal injury" if "caused by or at the direction of an 'insured' with the knowledge that the act would violate the rights of another and would inflict 'personal injury'" or "arising out of oral or written publications of material, if done by or at the direction of an 'insured' with knowledge of its falsity."  Second Am. Compl. Ex. 4, "Sentinel Coverage Package" at 4, ECF No. 18-5, at 28.

AOAO of Kamalii Ikena because such officers or directors are not "insureds"

under the policies; (6) coverage as to acts regarding the AOAO of Kamalii Ikena is

barred by a "business exclusion;"[5] (7) personal injury coverage is barred by a total

pollution exclusion;[6] and (8) there is no coverage for punitive damages as a matter

of public policy under Hawaii law.  Hartford invited the Masters' counsel to

provide any other information or allegations that would alter the Hartford's

position as to coverage.  *Id.* at 2-11.

**B.     Procedural History**

On October 27, 2010, Hartford filed the present declaratory relief

action (Civ. No. 10-00629 JMS-BMK) ("the Declaratory Relief Suit") based upon

diversity of citizenship, seeking a declaration that it owes no duty to defend or

indemnify the Masters as to the Underlying Action.  In its eight counts, Hartford's

original Complaint alleged essentially the same eight reasons for a lack of coverage

that were set forth in the October 1, 2010 supplemental reservation-of-rights letter.

---

[5]  Under the Hartford policies, "Personal Liability" coverage does not apply to "'bodily injury' or 'property damage' arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured,' whether or not the 'business' is owned or operated by an 'insured' or employ an 'insured.'"  Second Am. Compl. Ex. 4, at 32, ECF No. 18-4.

[6]  The Hartford policies exclude coverage for "personal injury" if "[a]rising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time" where "pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalies, chemicals and waste."  Second Am. Compl. Ex. 4, "Sentinel Coverage Package" at 5, ECF No. 18-5, at 29.

In its prayer for relief, the original Complaint sought (1) a declaration that there is no coverage for the entire Underlying Action, (2) alternatively, that there is no coverage for some of the claims asserted in the Underlying Action, (3) recovery of some or all of the costs expended in bringing this action, (4) "recovery of some or all of the defense fees and costs expended in having to defend the Underlying Suit," and (5) "such other relief that the court deems just and proper." Compl. at 36-37, ECF No. 1. It included, among other grounds, counts asserting that coverage was barred by a "business exclusion" and a "pollution exclusion" in the policies. *Id.* at 31-35.

On November 23, 2010, the Masters filed a Motion to Dismiss asking this court to decline to exercise jurisdiction under *Brillhart*. The Motion became moot, however, when Hartford filed First and Second Amended Complaints modifying the grounds upon which it seeks declaratory relief. Hartford filed its Second Amended Complaint on February 23, 2011. *See* ECF No. 18.

The Second Amended Complaint again seeks a declaration that (1) there is no coverage for the entire Underlying Action, or (2) alternatively, that there is no coverage for some of the claims asserted in the Underlying Action. *Id.* at 32-33. Hartford, however, is no longer seeking a declaration regarding the

"business" and "pollution" exclusions, nor "recovery of some or all of the defense fees and costs expended in having to defend the Underlying Suit."

Meanwhile, on December 23, 2010, the Masters filed a separate suit against Hartford in the Circuit Court of the Fifth Circuit, State of Hawaii ("the Bad Faith Suit"), alleging that Hartford's filing of the Declaratory Relief Suit without notice to the Masters, and after defending them for over a year, amounted to unfair and deceptive trade practices, negligence, and bad faith. The Bad Faith Suit -- similar to the Declaratory Relief Suit -- also contains a count for declaratory relief, asserting that the Underlying Action is covered under Hartford's policies. ECF No. 1-1 (Civ. No. 11-00174) at 10 ¶ 48. Hartford removed the Bad Faith Suit to this court on March 16, 2011 based upon diversity of citizenship, 28 U.S.C. § 1332. ECF No. 1 (Civ. No. 11-00174). On March 31, 2011, Hartford's Declaratory Relief Suit and the Masters' Bad Faith Suit were consolidated without opposition. ECF No. 25.

The Masters filed their Motion to Dismiss Second Amended Complaint for Declaratory Judgment (directed at the Declaratory Relief Suit) on March 24, 2011. They then filed their Motion to Remand (directed at the Bad Faith Suit) on April 13, 2011. Hartford filed its consolidated Opposition on May

10, 2011, and the Masters filed their consolidated Reply on May 17, 2011.  The

matters are suitable for decision without an oral hearing under Local Rule 7.2(d).

## III.  STANDARDS OF REVIEW

### A.    Discretion to Decline Jurisdiction for Suits Under 28 U.S.C. § 2201

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in

pertinent part:

> (a) In a case of actual controversy within its jurisdiction .
> . . any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be
> sought.

Section 2201(a) provides a remedy; it does not confer jurisdiction.

Federal subject matter jurisdiction -- which exists here based upon diversity of

citizenship -- must exist independently.  *See Skelly Oil Co. v. Phillips Petroleum*,

339 U.S. 667, 671-72 (1950).  The Act is "deliberately cast in terms of permissive,

rather than mandatory, authority."  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d

1220, 1223 (1998) (en banc) (citation omitted).  That is, under § 2201, a district

court may decline to exercise jurisdiction over a declaratory action even though

subject matter jurisdiction is otherwise proper.  *Brillhart*, 316 U.S. at 494.

"The exercise of jurisdiction under the Federal Declaratory Judgment

Act . . . is committed to the sound discretion of the federal district courts."  *Huth v.*

*Hartford Ins. Co.*, 298 F.3d 800, 802 (9th Cir. 2002). In assessing whether a federal court should proceed in a declaratory judgment action, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

The court, however, may not "decline to entertain such an action as a matter of whim or personal disinclination." *Dizol*, 133 F.3d at 1223 (citation omitted). Rather, "if a party properly raises the issue in the district court, the district court must make a sufficient record of its reasoning to enable appropriate appellate review." *Id.* at 1225.

## B.     Motion to Remand

Pursuant to 28 U.S.C. § 1447(c), a party may bring a motion for remand to challenge removal of an action from state court to federal court. "The threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court." *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998); *see also Clinton v. Acequia, Inc.*, 94 F.3d 568, 570 (9th Cir. 1996) ("A defendant ordinarily may remove a state court action to federal court only if the plaintiff could have brought it there originally."). "The burden of establishing federal jurisdiction is on

the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted).

## IV.  DISCUSSION

In their Motion to Dismiss, the Masters seek dismissal of the Declaratory Relief Suit, asking the court to decline to exercise jurisdiction or "abstain" from deciding the insurance coverage questions because the action presents issues now pending in the Underlying Action.  In their Motion to Remand, the Masters ask the court to remand the Bad Faith Suit not because of a defect in the notice of removal or because of a lack of diversity of citizenship but, rather, "for the same reasons as set forth in their Motion to Dismiss."  Mot. to Remand at 3, ECF No. 27.

Thus, the court analyzes the same principles in deciding the Motions. After setting forth the basic concepts, the court addresses the Motion to Remand the Bad Faith Suit before addressing the Motion to Dismiss the Declaratory Relief Suit.[7]

---

[7]  Although the two suits have been consolidated, the Motions are directed at the separate complaints.  The court will address each Motion separately -- if the Masters prevail on either Motion, the suits would be "unconsolidated" if necessary.

## A.     The General *Brillhart* Principles

Whether the court should exercise its discretion to decline jurisdiction over a declaratory judgment action is guided by the factors first enunciated in *Brillhart*. *Brillhart*, the "philosophic touchstone for the district court," requires the court to consider whether declining jurisdiction will (1) avoid needless determination of state law issues; (2) discourage the filing of declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Dizol*, 133 F.3d at 1225. In addition to those factors, the Ninth Circuit has further suggested that district courts consider:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Id.* n.5 (citation omitted).

## B.     *Brillhart* Does Not Apply Where "Independent" Claims Are Joined

The *Brillhart* factors, however, do *not* apply "when other claims are joined with an action for declaratory relief (*e.g.*, bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief)." *Id.* at

1225.  Rather, when such claims for monetary relief are joined, "the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief."  *Id.*

Claims that exist independent of the request for a declaration are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule." *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998) (citing *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1289 & n.6 (9th Cir. 1996)). Among other reasons, this is because "[r]emanding only the declaratory component of such an action will frequently produce piecemeal litigation, a result which the Declaratory Judgment Act was intended to avoid, rather than promote." *Id.* (citations omitted).

And so, "[t]he appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Id.* at 1167-68 (citations omitted).  The Ninth Circuit later refined the relevant question to be "whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1113 (9th Cir.

2001).  "In other words, the district court should consider whether it has subject

matter jurisdiction over the monetary claim alone, and if so, whether that claim

must be joined with one for declaratory relief."  *Id.*

## C.     There Is No Basis to Remand the Bad Faith Suit -- It Contains Claims "Independent" of Declaratory Relief

The Motion to Remand is directed at the Bad Faith Suit, which, as

described above, has two components:  it primarily seeks damages, but it also

contains a count for declaratory relief.  Applying the preceding principles, the

Motion to Remand the Bad Faith Suit plainly fails.

Initially, Hartford had a proper basis for removal.  The parties'

citizenship is diverse -- Hartford is a non-Hawaii corporation (with a principal

place of business in Connecticut), and the Masters are Hawaii residents with

Hawaii citizenship for purposes of 28 U.S.C. § 1332 -- and the amount in

controversy exceeds $75,000.  *See* ECF No. 1 (Civ. No. 11-00174) at 3.

The Bad Faith Suit seeks damages from Hartford for unfair and

deceptive trade practices, negligence, and bad faith.  These claims for damages are

"independent" of the claims for declaratory relief (in both the Declaratory Relief

Suit and the Bad Faith Suit).  The claims for damages "would continue to exist if

the request for a declaration simply dropped from the case."  *Snodgrass*, 147 F.3d

at 1168.  The claims "could be litigated in federal court even if no declaratory

claim had been filed." *R&D Latex Corp.*, 242 F.3d at 1113. The court "has subject matter jurisdiction over the monetary claim[s] alone" and those claims need not necessarily "be joined with one for declaratory relief." *Id.*

Rather, the Bad Faith Suit seeks damages because, among other reasons, Hartford allegedly (1) misled the Masters regarding coverage by "attempting to deny coverage it represented would be provided by the Policy," (2) "chang[ed] positions on coverage when the relevant facts and allegations in the Bosshard lawsuit remained unchanged," (3) "refus[ed] to inform the Masters of its intent to file a lawsuit against them," and (4) "refus[ed] to reasonably discuss with the Masters its position and/or change in position regarding coverage before filing a lawsuit against them." ECF No. 1-1 (Civ. No. 11-00174) at 9-10. Although the question regarding coverage is relevant, the Bad Faith Suit seeks damages regardless of whether coverage is ultimately owed. There is no reason why the damages claims *must* be joined with a claim for declaratory relief.

Accordingly, because the claims for damages "provide an independent basis for federal diversity jurisdiction, the district court is without discretion to remand or decline to entertain these causes of action." *Dizol*, 133 F.3d at 1225 n.6. The court DENIES the Motion to Remand.

**D.     The *Brillhart* Factors Favor Retention of the Declaratory Relief Suit**

Because the Bad Faith Suit remains in federal court, it necessarily

follows that the Masters' Motion to Dismiss the Declaratory Relief Suit also fails.

Dismissing the Declaratory Relief Suit -- or "abstaining" under *Brillhart* -- would

serve no purpose.  The court would still be presented with aspects of coverage in

the Bad Faith Suit.  And applying the *Brillhart* factors specifically to the

Declaratory Relief Suit weighs heavily in favor of the court maintaining

jurisdiction over all aspects of this action.

### 1.     *Needless Determination of State Law Issues*

The first factor -- a "needless determination of state law" -- involves

assessing whether (1) there is an ongoing parallel state proceeding regarding the

"precise state law issue," (2) the question concerns an area of law Congress

expressly reserved to the states, and (3) it is a lawsuit with no compelling federal

interest (*e.g.*, a diversity action).  *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367,

1371-72 (9th Cir. 1991) (*overruled in part on other grounds by Dizol*, 133 F.3d at

1225).

> "The concern in this factor is with unsettled issues of
> state law, not fact-finding in the specific case."  [*Nat'l
> Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109,
> 1118 (D. Alaska 1998) (citing *Robsac Indus.*, 947 F.2d at
> 1371)].  When state law is unclear, "[a]bsent a strong
> countervailing federal interest, the federal court should

> not elbow its way . . . to render what may be an
> 'uncertain' and 'ephemeral' interpretation of state law."
> *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992).

*Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006).  Thus, the

court assesses not merely whether the action raises a state law issue (which is the

case for almost all diversity actions), but rather whether it presents an *unsettled*

issue of state law.

Here, there are no unsettled questions of state law.  Hartford is no

longer seeking a declaration regarding a "pollution exclusion" or reimbursement of

costs and fees expended in defense of the Underlying Action -- issues which might

have been "unsettled."  Further, the Underlying Action does not involve the

"precise state law issue" presented in the Declaratory Relief Suit.  In the

Underlying Action, the Bosshards seek damages and other relief from Defendants

for conspiracy, trespass, invasion of privacy, defamation, damage to the Bosshards'

trees, and related causes of action.  In this action, Hartford seeks, at least in part, a

declaration that it is not required (or is no longer required) to defend or to

indemnify the Masters in the Underlying Action, primarily because the Underlying

Action asserts that the Masters committed intentional torts (*i.e.*, there is no

"occurrence" under the Hartford policies) or that coverage is otherwise excluded

under the policies.

There is also no "parallel" action in state court. *See Dizol*, 133 F.3d at 1225 (indicating that the test is whether "there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed").[8] Hartford is not a party to the Underlying Action between the Bosshards and the Masters. Indeed, Hartford probably *cannot* be a party to that action, at least for collateral issues regarding insurance coverage -- Hawaii law disfavors joinder of insurers in third-party tort actions. *See Olokele Sugar Co. v. McCabe, Hamilton & Renny Co.*, 53 Haw. 69, 71, 487 P.2d 769, 770-71 (1971) (holding that "it would not be sound public policy to permit the insurer to be joined

---

[8] As this court noted in *Nautilus Insurance Co. v. K. Smith Builders*, 2010 WL 346457, at *5 n.2 (D. Haw. Jan. 29, 2010), the court is aware that Ninth Circuit opinions prior to *Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220, 1225 (1998) (en banc), provide a more flexible approach to analyzing whether two actions are "parallel." *See Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995) ("[W]hen an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court, the state court is the more suitable forum for a petitioner to bring a related claim."), *overruled in part on other grounds*, *Dizol*, 133 F.3d at 1227; *see also Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 755 (9th Cir. 1996) ("It is enough that the state proceedings arise from the same factual circumstances."), *overruled in part on other grounds*, *Dizol*, 133 F.3d at 1227; *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 800 (9th Cir. 1995) (finding state and federal actions parallel when the actions raised overlapping, but not identical, factual issues), *overruled in part on other grounds*, *Dizol*, 133 F.3d at 1227.

But, again, "[t]o the extent there is any conflict between *Dizol* and this line of cases, *Dizol*, en banc, sets the proper standard that a presumption in favor of declining jurisdiction occurs only '[i]f there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed.'" *K. Smith Builders*, 2010 WL 346457, at *5 n.2 (quoting *Dizol*, 133 F.3d at 1225). Further, even if the earlier line of Ninth Circuit cases is still instructive such that this action and the underlying action might be "parallel" in that they both relate to the nature of the Masters' actions, the court would still maintain jurisdiction over this action upon consideration of the other *Brillhart* factors.

as a defendant, in deference to what is believed to be a jury's tendency to find negligence or to augment the damages, if it thinks that an affluent institution such as an insurance company will bear the loss").

And because the court cannot remand the Bad Faith Suit, that suit cannot constitute a parallel state action. If anything, there is a "parallel" action in federal court that involves the same parties (*i.e.*, the Masters and Hartford) and that may involve the same coverage issues.

Additionally, merely because this action raises solely state insurance law issues -- an area of law Congress expressly left to the states, *Robsac*, 947 F.2d at 1371 -- this does not by itself weigh in favor of the court declining jurisdiction. "On numerous occasions, the United States District Court in the District of Hawaii has interpreted insurance policies pursuant to Hawaii state law to determine the scope of an insurer's duties to an insured." *Davis*, 430 F. Supp. 2d at 1120. "The fact that state law issues are implicated is not, in and of itself, sufficient grounds for declining jurisdiction." *Nautilus Ins. Co. v. K. Smith Builders*, 2010 WL 346457, at *3 (D. Haw. Jan. 29, 2010) (quoting *Gemini Ins. Co. v. Clever Constr., Inc.*, 2009 WL 3378593, at *8 (D. Haw. Oct. 21, 2009)).

Determining whether intentional acts would preclude coverage is straightforward because the court will construe the Hartford policies by applying a

well-established framework under Hawaii law. *See, e.g.*, *Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 411-12, 992 P.2d 93, 106-07 (2000); *Haw. Ins. & Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 87-88, 807 P.2d 1256, 1260 (1991). Accordingly, the mere fact that the court will need to construe the Hartford policies does not raise an adequate reason to decline jurisdiction. *See also Allstate Ins. Co. v. Gomez*, 2009 WL 3018712, at *4 (D. Haw. Sept. 18, 2009) ("Interpreting insurance contracts using general rules of contract construction does not usually involve complex issues of unsettled Hawaii law.").

In sum, the court finds that the "needless determination of state law issues" factor weighs in favor of the court maintaining jurisdiction.

### 2. *Forum Shopping*

Forum shopping typically occurs where a party "fil[es] a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." *Am. Cas. Co. of Reading, Pa. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999); *see also Dizol*, 133 F.3d at 1225 ("[F]ederal courts should generally decline to entertain reactive declaratory actions.").

There is no evidence of "forum shopping" here -- Hartford is not a party to the Underlying Action, and the Underlying Action does not present the

issue of insurance coverage.  Again, Hartford likely could not have joined the

Underlying Action because Hawaii disfavors joinder of insurers in third-party tort

actions.  *See Olokele Sugar*, 53 Haw. at 71, 487 P.2d at 770-71.  There is no

indication Hartford rushed to file the Declaratory Relief Suit anticipating that the

Masters would be filing a non-removable state court action.  *See Robsac*, 947 F.2d

at 1372 ("Reactive litigation can occur in response to a claim an insurance carrier

believes to be not subject to coverage even though the claimant has not yet filed his

state court action: the insurer may anticipate that its insured intends to file a

non-removable state court action, and rush to file a federal action before the

insured does so.").  Thus, this factor weighs in favor of maintaining jurisdiction.

### 3.    *Avoidance of Duplicative Litigation*

A presumption to decline jurisdiction arises "[i]f there are parallel

state proceedings involving the same issues and parties pending at the time the

federal declaratory action is filed."  *Dizol*, 133 F.3d at 1225 (citing *Chamberlain v.

Allstate Ins. Co.*, 931 F.2d 1361, 1366-67 (9th Cir. 1991)).  As analyzed above,

however, there was no parallel proceeding pending when this action was filed.  The

Underlying Action involves different claims and different parties than those

presented in this action.  Further, the court's determination of Hartford's duties to

defend and indemnify the Masters does not appear to require threshold fact-finding

that would duplicate facts at issue in the Underlying Action.  *See K. Smith Builders*, 2009 WL 346457, at \*5 (citing cases rejecting the argument that issues in underlying state liability action will be duplicative of issues in federal action seeking declaration regarding duty to defend and indemnify).  The coverage issue here focuses on the allegations of the Underlying Action, not whether the Masters have actual liability for those allegations if proven.  Any possible duplicative fact-finding is speculative, and does not require this court to dismiss this action now in favor of the Underlying Action.  If the posture arises where a coverage question hinges precisely on a disputed factual question at issue in the Underlying Action, the court can defer to the Underlying Action at that time.  This factor, however, weighs in favor of maintaining jurisdiction.

### 4.    *Other Factors*

The additional factors noted in *Dizol* also generally weigh in favor of the court maintaining jurisdiction.  First, this action will address and clarify the legal obligations, if any, that Hartford has to the Masters in the Underlying Action.  Second, as analyzed previously, there is no indication that this action was filed merely for the purposes of "procedural fencing" or to obtain a res judicata advantage.  Third, it does not appear that this action will result in excessive "entanglement" between the federal and state court systems -- the insurance

coverage issues raised here (*e.g.*, whether the allegations of the Underlying FAC raises the potential for covered claims) are largely separate from the factual issues in the Underlying Action (*e.g.*, whether the Masters trespassed on Bosshards' property or destroyed a hedge of trees). Finally, given that Hartford chose this forum and the presence of the properly-removed Bad Faith Suit, it is obviously more convenient for the Declaratory Relief Suit to remain in this consolidated action.

In sum, the court finds that the *Brillhart* factors weigh in favor of retaining jurisdiction over the Declaratory Relief Suit.

## V. <u>CONCLUSION</u>

Based on the above, the court DENIES the Masters' Motion to Remand Civil Action (CV 11-00174) Back to State Court [ECF No. 27] and DENIES the Masters' Motion to Dismiss Second Amended Complaint for Declaratory Judgment [ECF No. 23].

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 2, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Hartford Underwriters Ins. Co. v. Masters, et al.*, Civ. No. 10-00629 JMS/BMK; *Masters, et al. v. Hartford Underwriters Ins. Co.*, Civ. No. 11-00174 JMS/BMK, Order (1) Denying Garth H. Masters and Kathi L. Masters' Motion to Dismiss Second Amended Complaint, and (2) Denying Garth H. Masters and Kathi L. Masters' Motion to Remand

27